OPINION OF THE COURT
John F. Pollard, J.
The parents of these 20 multihandicapped children applied to this court, pursuant to section 236 of the Family Court Act, for orders of reimbursement from the City of New York for the costs and expenses of educational programs provided for their children during the summer of 1978 at the New York Institute for the Education of the Blind. The city moved to join and implead the Commissioner of Education and that motion was granted by Judge Reginald Matthews on August 16, 1978. Thereafter, this court heard arguments and accepted memoranda from the petitioners, the city, and the commissioner relevant to the issue of which entity, the city or the State, bears primary financial responsibility for the summer *870 education of children within the scope of article 85 of the Education Law, i.e., instruction of the deaf and of the blind.
BACKGROUND
The New York Institute for the Education of the Blind is an institution subject to visitation by the commissioner. (Education Law, § 4201.) "All blind persons of suitable age and capacity * * * shall be eligible for appointment as state pupils” and such appointments are made by the commissioner. (Education Law, § 4206, subd [1]; § 4202.) Under section 4207 of the same act, each pupil in the so-called "4201 schools” is provided with board, lodging and tuition.
Neither the city nor the commissioner questions the need of these children for the summer program, but each claims that the other must initially assume the costs.
The city contends that the commissioner is responsible for the year-round education of these State pupils and that handicapped children receiving services under article 85 of the Education Law are not within the jurisdiction of the Family Court. The city relies heavily on Matter of Levy (38 NY2d 653, 658-659): "[A]s a matter of history and tradition our society has accorded special recognition to the blind and to the deaf in.the field of education as elsewhere.”
It is the commissioner’s position that article 85 schools operate as such for the traditional 10-month school year only and that Family Court may issue orders for instructional programs provided for State pupils during July and August. The commissioner cites Schneps v Nyquist (58 AD2d 151, mot for lv to app den 42 NY2d 808) in support of its argument that the State’s duty to provide educational services for the handicapped is limited to the academic year, September to June.
LEGISLATIVE ANALYSIS
At issue is the interpretation of chapter 853 of the Laws of 1976, a legislative enactment that completely revised article 89 of the Education Law, entitled Children with Handicapping Conditions, and amended articles 85, 87 and 88 which relate to facilities for the deaf and the blind. The pertinent sections of the Family Court Act were revised to conform to the changes in the Education Law. If article 85 children were accorded special treatment in the past, as the city maintains, their more favorable status rested on the pre-1976 statute and *871 this court must determine whether or not the Legislature intended to continue such a preference.
Prior to the 1976 amendment, there was no provision for school district contribution in article 85. The new section 4204-b of the Education Law obliges the school districts to reimburse the State for children initially appointed to "4201 schools” after June, 1977. The amount of reimbursement is defined in subdivision 8. of section 4401 of article 89. Thus, the financing of article 85 institutions was modified and the modification was linked to article 89.
In 1976, the definition of a handicapped child under article 89 was broadened to include "a person under the age of [21] who is entitled to attend public schools pursuant to [§ 3202] of this chapter and who, because of mental, physical or emotional reasons can receive appropriate educational opportunities from special services and programs”. (§ 4401.) Included in the list of special services under paragraph d of subdivision 2 of section 4401 is appointment to a State or State supported school under article 85, 87, or 88. Again there is a cross reference between the broader article 89 (handicapping conditions) and the more specific article 85 (the deaf and the blind). Both are tied to section 3202 (free public schools).
It must also be noted that the role of the State Education Department under article 89 was greatly expanded by the new sections 4403 and 4404.
These changes reflect recommendations urged upon the Legislature by the Board of Regents in Position Paper No. 20, issued in November, 1973. They are also attuned to the provisions of the Federal Education of the Handicapped Act of 1975, especially those sections which pertain to the eligibility of the States for Federal aid (US Code, tit 20, § 1412 et seq.).
When the Division of the Budget recommended approval of chapter 853, paragraph 4 of its report stated: "This bill is designed to simplify and rationalize the existing array of educational services to handicapped children * * * (c) It increases the Commissioner of Education’s responsibility to review programs operated by other State agencies, and will contribute to reducing inequities in the quality of these programs, and will conform State law to Public Law 94-142 (Federal Education of the Handicapped Act).”
Section 236 (subd 1, par [a]) of the Family Court Act was made applicable to "handicapped children, as defined in subdivision 1 of section [4401] of the education law, who are not *872 eligible for educational services pursuant to article [73, 85, 87, 88 or 89] of the education law”.
Writing to the Executive Chamber in support of the proposed legislation on July 12, 1976, counsel for the Office of Court Administration alluded to the Family Court’s reduced role in education: "The Family Court will retain initial jurisdiction for determining the educational needs of handicapped children who are not entitled to attend school; specifically, if school is not in session or a child is less than five years of age, the Family Court can provide for his education and charge the expenses upon the appropriate county or the City of New York (§ 236).”
In his memorandum filed when he approved the legislation, Honorable Hugh Carey, Governor, stated: "This bill comprehensively revises Article 89 of the Education Law and the Family Court Act. It establishes a more rational and equitable approach to meeting the educational needs of children with handicapping conditions for whom there are no suitable educational programs available in public schools or boards of cooperative educational services.” (McKinney’s 1976 Session Laws, vol 2, p 2448.)
A reading of the statutes against their background and of the Governor’s message leads this court to conclude that the Legislature intended to upgrade and improve the education of all handicapped children without in any way diminishing the opportunities already afforded to the deaf and the blind. In other words, children attending article 85 schools and those receiving other services under article 89 will be treated in as similar a manner as their differing handicaps permit.
CONCLUSION
The phrase "not eligible for educational services” has been interpreted to refer to the lack of free instructional facilities for a period of two months each year. (Schneps v Nyquist, 58 AD2d 151, supra; Matter of Scott K., 92 Misc 2d 681.) Aware that some individuals would require attention for the full calendar year, the Legislature authorized Family Court to issue orders charging a county or the City of New York with the cost of meeting this need. (Education Law, § 4406; Family Ct Act, § 236.) Since every special educational program is enumerated in section 236, this court has no choice but to conclude that children covered by article 85 as well as those under article 89 are within the jurisdiction of this court and *873 must petition it if they wish to be reimbursed for summer school expenses.
This court is not unaware that severely handicapped children are burdened by presenting their case to two tribunals: article 85 pupils must seek appointment from the commissioner for the academic year and apply to the court for summer school; article 89 pupils must seek services from the school district for 10 months and from the court for 2 months. But until the Legislature establishes a procedure whereby those requiring year-round education may obtain it from one source, the present arrangement must suffice. (See 29 Syracuse L Rev, pp 144-145.)
After reviewing the applicable statutes and case law, hearing arguments and studying all papers submitted, it is ordered that the City of New York pay the costs and expenses incurred by the petitioners for the educational program conducted at the New York Institute for the Education of the Blind in the summer of 1978.